## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                                        )
**FRANKLIN ABERNATHY,**                )
                                                        )
      **Plaintiff,**                        )
                                                        )                    **Civil Action No.**
      **v.**                                )                    **15-10431-FDS**
                                                        )
**SHAUN DEWEY, et al.,**                  )
                                                        )
      **Defendants.**                    )
_____)


### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO AMEND
### AND DEFENDANTS' MOTIONS TO DISMISS

**SAYLOR, J.**

      This action arises out of an alleged attack on a prisoner by correctional officers at Souza

Baranowksi Correctional Center.  Plaintiff Franklin Abernathy has brought claims for relief

under 42 U.S.C. § 1983, Mass. Gen. Laws ch. 12, § 11I, and state tort law.

      The first amended complaint alleges that defendant Michael Rumery used excessive force

in handcuffing Abernathy, and that defendants Gerard Breau and Kyle Sheldon assaulted him by

aggressively pulling and twisting his arms through a slot in his cell door, severely injuring him.

The complaint further alleges that defendant David Darling, who was the supervisor on duty,

joined in the assault; that defendant Shawnn Gyles and an unidentified officer witnessed the

assault but failed to intervene; and that defendant Shaun Dewey, a Department of Corrections

official, attempted to cover up the incident.  It alleges that defendant "Kristal," a nurse at UMass

Correctional Health ("UMCH"), refused to provide medical treatment to Abernathy.  Finally, it

asserts a claim for supervisory liability against Thomas Groblewski, D.O., the medical director

of UMCH.

Defendants Sheldon, Dewey, Breau, and Gyles (the "DOC defendants") have jointly moved to dismiss the complaint for a failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).  Defendant Groblewski has moved to dismiss the complaint against him for insufficient service of process under Fed. R. Civ. P. 12(b)(5) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiff has opposed those motions and has filed a motion for leave to amend the complaint.  For the following reasons, the DOC defendants' motion to dismiss will be denied; Dr. Groblewski's motion to dismiss will be denied without prejudice; and plaintiff's motion for leave to amend will be granted in part and denied in part.

## I.    Factual Background

The facts are set forth as described in the proposed second amended complaint ("SAC").

On April 3, 2013, Franklin Abernathy was an inmate at Souza Baranowski Correctional Center.  He was assigned to a cell in the Special Management Unit ("SMU") with inmate Leon Shelby.  (SAC ¶¶ 16-17).  Kyle Sheldon, Gerard Breau, and Michael Rumery were correctional officers at SBCC assigned to Abernathy's cell block.  (Id. ¶¶ 7-9).

On the morning of April 3, Rumery and "Kristal," a nurse employed by UMass Correctional Health, came to Abernathy's cell to administer medication.  (Id. ¶ 23). [1]  The complaint alleges that Shelby had placed a blanket over the window of the cell door; when Rumery ordered Shelby to remove it, he refused.  (Id. ¶ 24).  Rumery then instructed Abernathy to remove the blanket, but he refused because the blanket belonged to Shelby.  (Id. ¶ 25). According to the complaint, Rumery "told [Abernathy] that if he [did] not remove the blanket

---

[1] The complaint does not specify whether "Kristal" is a first or last name.

from the window, [Abernathy would] not be getting [his] medication." (*Id.*  ¶ 26).  The complaint alleges that when Abernathy asked for his medicine, Rumery said, "Fuck him!"  He then "slammed" the cell door slot closed, and told nurse Kristal not to give Abernathy his medicine that day.  (*Id.* ¶ 26).  The lack of medication caused Abernathy to suffer "severe excruciating chest pains and left shoulder and arm pain."  (*Id.* ¶ 27).

Eventually, Shelby removed the blanket from the door.  Later, as Gerard Breau was making his rounds on the tier, Abernathy "informed Breau that he was having severe chest pains and needed to see someone immediately."  (*Id.*).  Breau denied the request and told him, "You get nothing!"  (*Id.*).

At about 11:30 a.m. the same day, an argument began between Shelby and Kyle Sheldon over a food tray.  (*Id.* ¶¶ 28-31).  Shortly thereafter, while Sheldon and Breau were collecting trays after lunch, Shelby threw a cup of water in Sheldon's face.  (*Id.* ¶ 32).  Sheldon and Breau immediately left the tier, and returned with Rumery.  (*Id.* ¶ 33).  The three officers ordered Shelby to come to the cell door to be handcuffed, but he refused to do so.  (*Id.* ¶ 33-36).  The officers left again, and then returned once more with Shawnn Gyles and an unidentified correctional officer. (*Id.* ¶ 39).

The five officers then handcuffed Shelby through the cell door slot without incident.  (*Id.* ¶ 39).  They informed Abernathy that he, too, needed to be handcuffed prior to opening the cell door.  (*Id.*). The complaint alleges that when Abernathy complied, "Rumery in an aggressive manner grab[bed] and took hold of [his] right hand and slammed the handcuffs on [his]wrist with such force that the handcuff[s] [stabbed] through [his] skin" causing bleeding and pain.  (*Id.* ¶ 41).  According to the complaint, Breau and Sheldon then grabbed Abernathy's arms and began twisting and pulling them, causing scratches and bruising.  (*Id.* ¶ 42-44).  "As [Abernathy]

cried out in pain, Rumery, Breau, and Sheldon continued to laugh and encourag[ed] each other to pull harder and apply more force." (*Id.* ¶ 46).

The complaint alleges that David Darling, the supervisor for the section of the SMU where Abernathy was held, ran to the cell and started twisting Abernathy's thumb and index finger, causing Rumery, Breau, and Sheldon to apply even more force. (*Id.* ¶ 49). It further alleges that defendants Gyles and "John Doe" merely "looked on" while the assault was occurring, and did nothing to intervene or stop the attack. (*Id.* ¶ 47). Eventually, the officers stopped the assault when Shelby slipped his handcuffs in front of his body, grabbed a pen, and began stabbing at the officers' hands while they were pulling Abernathy's hands through the cell door slot. (*Id.* ¶ 51).

Abernathy and Shelby were placed in separate holding cells. (*Id.* ¶ 56). Abernathy was then removed from the cell and surrounded by Shaun Dewey (a DOC Captain assigned to the SMU), Darling, and Rumery. (*Id.* ¶ 57). According to the complaint, Dewey "told [Abernathy] in a threaten[ing] manner [to] 'Drop the issue and act like nothing happen[ed], that way we can all live together." (*Id.*). It alleges that as a result of Dewey's statement, Abernathy was scared to say anything about the assault out of fear that he would be assaulted again. (*Id.*).

Following the incident, nurse Kristal was called to provide medical treatment for Abernathy's cuts, bruising, and swelling. (*Id.* ¶ 66). Kristal, however, refused to treat him, stating "[I] am not touching [him], he will have to wait [for] some other nurse to come and give him his medication and treat him." (*Id.* ¶ 67).

Defendant Thomas Groblewski was the medical director of proposed new defendant UMass Correctional Health, Inc., which provided medical care and treatment to inmates in the custody of the Department of Correction. (*Id.* ¶¶ 13-14). The second amended complaint alleges

that Groblewski hired Kristal, (*id.* ¶ 15), and that he was responsible for supervising her in the performance of her duties.  The complaint further alleges that prior to the date of the assault, UMCH and Groblewski were "aware by numerous grievances and complaints by inmates" that nurses were "denying [ ] adequate medical care and treatment" to inmates who were involved in physical altercations with correctional officers.  (*Id.* ¶ 69).  The complaint appears to allege that Groblewski and UMCH "had an unspoken policy regarding nurses at SBCC denying inmates medical care and treatment after inmates [were] assaulted and injured for long periods of time . . . ."  (*Id.* ¶ 70).  Specifically, the complaint alleges that it had been reported to Groblewski and UMCH that on "several occasions," Kristal "conspired with correctional officers to cover up the incident by denying [ ] adequate medical care and treatment, and not reporting the incident or filing reports."  (*Id.* ¶ 71).[2]

The complaint alleges that as a result of the assault, Abernathy suffered "severe 'black and blue' bruising on both arms and wrists [scratches], numbness in both arms and wrist, nerve damage, loss [of] feeling, loss of sleep, fear, [and] physical and mental anguish."  (*Id.* ¶ 74).

## II.    **Procedural Background**

 Plaintiff Abernathy filed the original complaint in this case on February 13, 2015, and an amended complaint on December 16, 2015.  The first amended complaint includes eleven counts.  Counts One through Five, in substance, assert claims for excessive force and a failure to protect under 42 U.S.C. § 1983 against the correctional officer defendants.  Count Six asserts a claim under § 1983 against defendant Rumery only for "intentional interference with prescribed medication."  Count Seven asserts a § 1983 claim against nurse Kristal and Dr. Groblewski for

---

[2] These particular factual allegations against Groblewski and UMCH were not included in the first amended complaint.

"denial of medical care and treatment" and "failure to supervise."[3]  Count Eight asserts a claim against Dewey, Darling, and Rumery for "conspiracy to violate civil rights," also in violation of 42 U.S.C. § 1983.  Count Nine asserts a claim against Darling, Rumery, Breau, and Sheldon under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, § 1 *et seq*., for assault and battery.  Count Ten asserts a claim against all defendants under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I.[4]  Count Eleven asserts a claim against Dewey, Darling, Rumery, Breau, Sheldon, Gyles, and Doe under the MTCA for intentional infliction of emotional distress.[5]

The DOC defendants have jointly moved to dismiss the complaint for a failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).  Defendant Groblewski has moved to dismiss the complaint against him for insufficient service of process under Fed. R. Civ. P. 12(b)(5), for failure to exhaust administrative remedies, and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Plaintiff has opposed those motions and has also filed a motion for leave to amend the complaint again, together with a proposed Second Amended Complaint.

## III.   Plaintiff's Motion for Leave to Amend the First Amended Complaint

The proposed Second Amended Complaint would add three new defendants to the existing claims.  The proposed SAC also asserts a new cause of action for negligence against all defendants (new Count Twelve), a new cause of action against Gelb, Dewey, Darling, and

---

[3] The proposed second amended complaint moves the "failure to supervise" claim against Groblewski from Count Seven to Count Nine.

[4] Instead of "all defendants," the proposed second amended complaint brings the MCRA claim against defendants Gelb, Dewey, Darling, Rumery, Breau, Sheldon, Gyles, and Doe.

[5] The proposed second amended complaint brings a claim for intentional infliction of emotional distress against all defendants.

Rumery for a failure to train and supervise (new Count Fourteen), and includes various
additional factual allegations relevant to all claims.  For the reasons described below, plaintiff's
motion for leave to add UMass Correctional Health as an additional defendant will be denied;
leave to add new defendant Gelb to Count Eight will be denied; leave to add new defendants
Gelb and Spencer to Count Fourteen will be granted; leave to add a negligence claim against the
existing defendants will be granted; and leave to amend the complaint to add factual allegations
will be granted.

A.   **Legal Standard**

Fed. R. Civ. P. 15 provides that a party may amend its pleading only under certain
circumstances.  If the pleading is one to which a responsive pleading is required, a party may
amend its pleading as a matter of course within 21 days of the service of the responsive pleading
or service of a motion under Fed. R. Civ. P. 12, whichever is earlier.  Fed. R. Civ. P. 15(a)(1)(B).
After that time, "a party may amend its pleading only with the opposing party's written consent
or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P.
15(a)(2).  In determining whether to grant a motion to amend, the Court must "examine the
totality of the circumstances and [ ] exercise its informed discretion in constructing a balance of
pertinent considerations."  *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006)
(citing *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1517 (1st Cir. 1989)).
However, leave to amend may be denied for several reasons, including, among other things,
"futility of amendment."  *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir.
2009).

When considering an opposition to a motion to amend on the grounds of futility, the court
must apply the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Kenney*

7

*v. State Street Corp.*, 2011 WL 4344452, at *2 (D. Mass. Sept. 15, 2011); *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001).  Whether a complaint should survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  A claim is plausible on its face if it raises a right to relief beyond a speculative level by pleading enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  While the court will generally accept all well-pleaded factual allegations in a complaint as true and draw all reasonable inferences in a plaintiff's favor, *id.*, the court should disregard any "legal conclusion[s] couched as . . . fact" or "[t]hreadbare recitals of the elements of a cause of action."  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

### B. Analysis

#### 1. New Defendants

The proposed SAC seeks to add three new defendants—UMass Correctional Health, former Souza Baranowski Superintendent Bruce Gelb, and former Commissioner of Correction Luis Spencer.

### a.    <u>UMass Correctional Health</u>

The proposed SAC seeks to add UMCH as a defendant under a new Count Nine, which asserts claim under 28 U.S.C. § 1983 for an alleged failure to train and supervise nurse Kristal. UMCH is an arm of the state and therefore is immune from suit under the Eleventh Amendment of the United States Constitution.  *See Sepulveda v. UMass Corr. Health Care*, 2016 WL 475168, at *14-15 (D. Mass. Feb. 5, 2016); *Podgurski v. Department of Correction*, 2014 WL 4772218, at *4 (D. Mass. Sept. 23, 2014).  Accordingly, plaintiff's motion for leave to add UMCH as a defendant will be denied as futile.

### b.    <u>Gelb and Spencer</u>

The proposed SAC also seeks to add civil rights and negligence claims against Bruce Gelb and Luis Spencer.  Specifically, the proposed SAC asserts claims against Gelb pursuant to 42 U.S.C. § 1983 (Counts Eight and Fourteen) and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I (Count Eleven).  The proposed SAC asserts a single § 1983 claim against Spencer (Count Fourteen) and a common-law negligence claim against both Gelb and Spencer (Count Twelve).[6]  The DOC defendants contend that leave to amend should be denied because the limitations period for those claims has expired, and, in any event, that leave to amend to add claims under § 1983 should be denied as futile.

### i.    <u>Statute of Limitations</u>

The proposed civil rights and negligence causes of action are subject to a three-year statute of limitations.  *See Poy v. Boutselis*, 352 F.3d 479, 483 (1st Cir. 2003) (§ 1983 "borrows" state limitations period for personal injury claims); Mass. Gen. Laws ch. 260, § 5B (state civil

---

[6] Although Spencer's name does not appear in the caption of Count Fourteen, it is clear from the body of that count that plaintiff intended to include Spencer as one of the defendants.

rights actions); Mass. Gen. Laws ch. 260, § 2A (negligence).  Plaintiff's claims accrued on April

3, 2013, and he filed for leave to amend his complaint on June 9, 2016, two months after the

expiration of the three-year period.

When a plaintiff seeks to add a claim against a new defendant in an amended complaint

filed after the limitations period has run, the claim is "time-barred as a matter of law unless the

amended complaint 'relates back' to the original complaint."  *Coons v. Industrial Knife Co.*, 620

F.3d 38, 42 (1st Cir. 2010).[7]  Whether an amendment relates back, in turn, is governed by Fed.

R. Civ. P. 15(c).  Under Rule 15(c)(1)(A), an amendment will relate back when "the law that

provides the applicable statute of limitations allows relation back."  Thus, in effect, Rule

15(c)(1)(A) "cements in place a one-way ratchet; less restrictive state relation-back rules will

displace federal relation-back rules, but more restrictive state relation-back rules will not."

*Morel v. DaimlerChrysler AG*, 565 F.3d 20, 26 (1st Cir. 2009); *see also* Fed. R. Civ. P. 15

advisory committee notes (1991 Amendment) (Rule 15(c)(1)(A) designed to "make it clear that

the rule does not apply to preclude any relation back that may be permitted under the applicable

limitations law.").

Plaintiff seeks to add claims under both Massachusetts law (Mass. Gen. Laws ch. 12,

§ 11I and common-law negligence) and federal law (42 U.S.C. § 1983).  Thus, under Fed. R.

Civ. P. 15(c)(1)(A), whether plaintiff's state-law claims relate back is an issue of Massachusetts

law.  *See Labrador v. Industrial Contractors' Supplies, Inc.*, 2015 WL 5737141, at *2 (D. Mass.

Sep. 30, 2015).  Mass. R. Civ. P. 15(c) provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the
> conduct, transaction, or occurrence set forth or attempted to be set forth in the
> original pleading, the amendment (including an amendment changing a party)

---

[7] "Under the doctrine of relation back, an amended complaint can be treated, for purposes of the statute of
limitations, as having been filed on the date of the original complaint."  *Pessotti v. Eagle Mfg. Co.*, 946 F.2d 974,
975 (1st Cir. 1991).

relates back to the original pleading.

Mass. R. Civ. P. 15(c).  "Since Massachusetts Rule 15 is less restrictive, it displaces Federal Rule

15 in this case." *Labrador*, 2015 WL 5737141, at *2.

Here, the proposed state-law claims against Gelb and Spencer unquestionably arise out of

the same conduct, transaction, or occurrence set forth in the original complaint.  Thus, the

proposed state-law claims relate back under Massachusetts law, and therefore relate back under

the federal rules as well.

With respect to plaintiff's federal claims under 42 U.S.C. § 1983, the law that "provides

the applicable statute of limitations" is, again, Massachusetts law.  *See Cayo v. Fitzpatrick*, 95 F.

Supp. 3d 8, 13 (D. Mass. 2015).  Following the same line of reasoning, those new claims would,

if allowed, relate back to the date of plaintiff's original complaint.  Because plaintiff filed his

original complaint within the three-year limitations period, they are not untimely.

### ii.     Futility

In the alternative, defendants contend that leave to amend the complaint to add claims

under § 1983 against Gelb and Spencer should be denied on the grounds that doing so would be

futile.  The proposed SAC adds Gelb to Count Eight, which asserts a claim for "conspiracy to

violate civil rights," and adds both Gelb and Spencer to Count Fourteen, which asserts a § 1983

claim for an alleged failure to properly train and supervise the correctional officer defendants.

### (1)     Count Eight

It appears that although the proposed SAC asserts that Count Eight ("conspiracy to

violate civil rights") is brought under § 1983, plaintiff apparently intends to bring a claim under

§ 1985, which provides a cause of action for "conspiracy to interfere with civil rights."  Section

1985 prohibits conspiracy to interfere with civil rights by (1) preventing an officer from

performing his or her duties, (2) obstructing justice by intimidating a party, witness, or juror, or (3) depriving a person of his or her legal rights or privileges.  42 U.S.C. § 1985.

The proposed SAC alleges that Gelb "conspired to withhold information of the assault on Plaintiff, and acted intentionally to undertake a course of conduct to violate Plaintiff's rights secured by the United States Constitution . . . ."  SAC ¶ 125.  That charge appears to stem from the allegation that Gelb failed to investigate the assault or otherwise take action after it was brought to his attention.  *See id.* ¶¶ 82-89.

A general allegation of conspiracy to violate civil rights is not sufficient to meet the pleading requirements of a cognizable claim of a § 1985 conspiracy.  Rather, "[t]o present an adequate conspiracy claim, there must be allegations of a common understanding between the conspiring parties."  *Dickinson v. Flanagan*, 893 F.2d 1338 (Table), 1990 WL 1421, *1 (9th Cir. 1990) (unpublished decision) (citing *Caldeira v. County of Kauai*, 866 F.2d 1175, 1181 (9th Cir.1989) *cert. denied* 110 S.Ct. 69 (1989)).  In other words, to state a claim for a § 1985 conspiracy, the complaint must plead that (1) two or more individuals acted in concert to commit an unlawful act, or to commit a lawful act by unlawful means; (2) an agreement between the individuals to inflict an injury upon him, and (3) an overt act that results in damages.  *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988).  Thus, for a § 1985 conspiracy to be actionable, it must have resulted in an "actual deprivation of a right secured by the Constitution and Laws."  *Id.*; *Brennan v. Hendrigan*, 888 F.2d 189, 195 (1st Cir. 1989).

Here, the proposed SAC does not allege or describe any agreement between the primary-actor defendants and Superintendent Gelb.  Nor can Gelb's alleged role in the conspiracy—covering up the assault—fairly be said to have "resulted in" or caused the assault itself.  Leave to amend the complaint to add defendant Gelb to Count Eight will therefore be denied.

### (2)    **Count Fourteen**

In Count Fourteen, the proposed SAC alleges that Gelb, Spencer, Dewey, Darling, and Rumery violated his Eighth Amendment rights by (1) "failing to properly train" defendants Breau, Sheldon, Darling, and Rumery "in their duties to provide care and custody to inmates in the SMU and not to abuse, assault or beat inmates," and (2) "failing to supervise" those defendants in the conduct of their duties "to provide care and custody to inmates in the SMU." SAC ¶¶ 144-48.

Supervisors may be liable under § 1983 "when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation." *Guzman v. City of Cranston*, 812 F.2d 24, 26 (1st Cir. 1987) (quoting *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). This encompasses situations where a supervisor "formulates a policy or engages in a practice that leads to a civil rights violation committed by another," and where he has notice of the conditions likely to lead to a deprivation of constitutional rights. *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir.1998).

Here, the proposed SAC alleges that Gelb and Spencer were "aware by numerous grievances and complaints from inmates . . . that correctional officers [were] assaulting and beating inmates [and] interfering with inmates receiving medical care . . . ." SAC ¶ 75. The proposed SAC further alleges the existence of an "unspoken policy or custom of not investigating inmate assaults [by correctional officers], and not taking remedial measures against correctional officers [creating] a climate in which correctional officers at SBCC believe[d] they could use unnecessary force" without fear of being disciplined. *Id.* ¶ 77. Although those allegations are sparse and somewhat vague, they are sufficient at this stage, particularly in light of plaintiff's *pro se* status, to state a claim under § 1983 for failure to supervise or discipline.

Accordingly, plaintiff's motion for leave to amend the complaint to add defendants Gelb and Spencer to Count Fourteen will be granted.

### 2.      Negligence Claim against Dr. Groblewski

Defendant Groblewski also contends that the proposed claim in the SAC for negligence should not be allowed for failure to comply with the notice requirements of Mass. Gen. Laws ch. 231, § 60L.[8] That statute, however, provides for mandatory notice in medical malpractice actions (as defined in Chapter 231, § 60B). Fairly read, the complaint does not allege a claim for medical malpractice against Dr. Groblewski, but rather a claim for general negligence—arising, presumably, out of his alleged failure to supervise defendant Kristal (who allegedly refused to provide medical care at all), rather than his medical judgments and decisions. Accordingly, plaintiff was not required to comply with the notice requirements of Section 60L, and leave to amend the complaint to add a common-law negligence claim will be granted.

### 3.      Conclusion

For the foregoing reasons, plaintiff's motion for leave to amend the complaint will be granted in part and denied in part. Specifically, leave to amend the complaint to add defendants Gelb and Spencer to Count Fourteen will be granted. Leave to amend the complaint to add a claim for common-law negligence against all defendants will also be granted. Leave to amend the complaint will be denied as to the addition of UMCH as a defendant under any claim, and to the addition of defendant Gelb in Count Eight.

## IV.      DOC Defendants' Motion to Dismiss

The DOC defendants have moved to dismiss the first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), alleging that plaintiff failed to exhaust his administrative remedies

---

[8] The DOC defendants have not challenged the addition of the negligence claim.

before filing suit, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C.

§ 1997e(a).  Because the second amended complaint contains substantially the same factual

allegations as the first amended complaint as to exhaustion, the Court will deem the DOC

defendants' motion to have been renewed.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions

under 42 U.S.C. § 1983 . . . or any other Federal law, by a prisoner . . . until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This limitation on the ability of

prisoners to sue "applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other

wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  A plaintiff's failure to exhaust

administrative remedies is an affirmative defense as to which a defendant bears the burden of

proof.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).

The PLRA "uses the term 'exhausted' to mean what the term means in administrative

law, where exhaustion means proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

Requiring proper exhaustion in administrative proceedings "serves the twin purposes of

protecting administrative agency authority and promoting judicial efficiency."  *McCarthy v.*

*Madigan*, 503 U.S. 140, 145 (1992).  Requirements set by state law and regulations "define the

boundaries of proper exhaustion," *Jones*, 549 U.S. at 218, and include complying with "an

agency's deadlines and other critical procedural rules."  *Woodford*, 548 U.S. at 90-91.

The Massachusetts Commissioner of Correction has issued regulations for the processing

of inmate grievances, codified at 103 C.M.R. § 491.00 *et seq*.  Under the regulations, "[a]

grievance shall be filed within ten working days of the actual incident or situation or within ten

working days of the inmate's becoming aware of the incident or situation."  *Id.* § 491.08(4).  The

15

grievance is initially reviewed by the Institutional Grievance Coordinator, who must propose a resolution or deny the grievance within ten working days of receiving it. *Id.* §§ 491.06, 491.10(1)(e). Grievance denials must be made in writing and must "inform the inmate of the right of appeal." *Id.* §§ 491.10(1)(f), (4). The inmate may appeal "within ten working days from receipt of a decision to the Superintendent." *Id.* § 491.12(1).

The DOC defendants contend that plaintiff failed to exhaust his administrative remedies because he filed his grievance outside of the required ten-day period. The parties devote extensive space in their briefings disputing whether defendants should be estopped from claiming a failure to exhaust or whether plaintiff's administrative remedies should be deemed "unavailable" based on his allegation that he was threatened with retaliation if he reported the incident. *See, e.g.*, *Kaba v. Stepp*, 458 F.3d 678, 682 (7th Cir. 2006); *Hemphill v. New York*, 380 F.3d 680, 684 (2d Cir. 2004).

Those arguments, however, overlook the most basic factual dispute between the parties: defendants contend that, based on a review of their own records, plaintiff did not file a grievance until June 10, 2013. Plaintiff, however, contends that he submitted a grievance form on April 11, 2013 (eight days after the incident), and has attached as an exhibit what he contends is a duplicate of that form. (*See* D. 62, Ex. 1).[9] Plaintiff further states that, after not receiving a response to that grievance, he properly appealed to the Superintendent on April 26, 2013. (*See* D. 62, Ex. 2). Those allegations—which this Court must take as true for purposes of a motion to dismiss—establish that plaintiff timely filed and appealed his grievance. Because the pleadings allege facts sufficient to establish that plaintiff may have properly exhausted his administrative remedies before bringing this suit, dismissal is appropriate. Accordingly, DOC defendants'

---

[9] Defendants do not appear to acknowledge that document in their reply memorandum.

motion to dismiss for failure to exhaust administrative remedies will be denied.[10]

## V.   Dr. Groblewski's Motion to Dismiss

Defendant Groblewski also moved to dismiss the first amended complaint for insufficient service of process, failure to exhaust administrative remedies, and failure to state a claim for which relief can be granted.

### A.   Service of Process

Fed. R. Civ. P. 4 sets forth the acceptable methods for service of process.  Under Rule 4(e), there are four ways by which to serve an individual defendant within a federal judicial district:  (1) by following the requirements of state law for serving a summons in actions brought in the courts of general jurisdiction in the state where the district court is located or where service is made (here, Massachusetts); (2) by delivering a copy of the summons and the complaint to the individual personally; (3) by leaving copies of those items at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (4) delivering copies to an agent authorized by appointment or by law to receive service of process.

The Massachusetts rules for service are substantially similar to the federal rules.  Service can be made upon an individual by "delivering a copy of the complaint to him personally; or by leaving copies thereof at his last and usual place of abode; or by delivering copy of the summons and of the complaint to an agent authorized by appointment or by statute to receive service of process . . . ."  Mass. R. Civ. P. 4(d)(1).

Here, plaintiff elected to have service on Dr. Groblewski completed by the United States

---

[10] The Court is not, of course, ruling that plaintiff in fact exhausted his administrative remedies, but only that the complaint plausibly alleges that he has done so.

Marshals Service in accordance with Fed. R. Civ. P. 4(c)(3).  The return of service form indicates that the summons was signed for by one Susan Walker from "HR" at Dr. Groblewski's work address.  (D. 15).  Plaintiff concedes that service on Walker does not constitute proper service under the rules.

On October 23, 2015, the Court granted plaintiff's motion to proceed *in forma pauperis*, issued a summons as to Dr. Groblewski, and ordered plaintiff to complete service within 120 days of that date.  It has been more than 120 days since that date, and Dr. Groblewski has not yet been served.  However, rather than dismissing the complaint, the Court has discretion to extend the period for service of process.  *Id.*  Rule 4(m) directs the court to "extend the time for service for an appropriate period" when a plaintiff shows "good cause" for failing to effect service within 120 days of filing the complaint.  Fed. R. Civ. P. 4(m); *see also Laurence v. Wall*, 551 F.3d 92, 94 (1st Cir. 2008).  "[A] plaintiff proceeding IFP  shows good cause when either the district court or the United States Marshals Service fails to fulfill its obligations under section 1915(d) and Rule 4(c)(3)."  *Laurence*, 551 F.3d at 94.

Under the circumstances, there is good cause for failing to serve Dr. Groblewski, and plaintiff will be granted a reasonable amount of time to attempt service a second time.  *See Rua v. Glodis*, 2011 WL 5076319, at *2 (D. Mass. Oct. 24, 2011); *cf. Lindsey v. United States RRB*, 101 F.3d 444, 447 (5th Cir. 1996) (explaining that IFP plaintiff's claim was properly dismissed where "he was told by the district court that process was not served on the [defendant], yet the plaintiff did nothing about it").  Dr. Groblewski's motion to dismiss for insufficient service of process will therefore be denied without prejudice to its renewal as may be appropriate.  The Court will direct the clerk to issue a new summons, and plaintiff will be granted an additional 60 days to complete service.

B.      **Exhaustion of Administrative Remedies**

Dr. Groblewski also contends that the claims against him in the first amended complaint must be dismissed because plaintiff failed to exhaust his administrative remedies.[11]  Dr. Groblewski's motion was filed before plaintiff moved the court for leave to amend the complaint.  Because the second amended complaint includes new factual allegations that may be relevant to that issue, the Court will allow Dr. Groblewski an opportunity to respond to those allegations.  *See* SAC ¶¶ 93-98.  For the present time, Dr. Groblewski's original motion to dismiss as to exhaustion will be denied without prejudice to Dr. Groblewski renewing his exhaustion defense by either (1) renewing his previously filed motion to dismiss as to exhaustion or (2) filing a new motion.

C.      **Failure to Train and Supervise**

Dr. Groblewski also contends that plaintiff's § 1983 claim against him should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  As with the issue of administrative exhaustion, the second amended complaint contains new factual allegations that may be relevant to resolving the issue.  *See* SAC ¶¶ 68-77.  Accordingly, Dr. Groblewski's motion to dismiss that claim will be denied without prejudice to its renewal.

VI.     **Conclusion**

For the foregoing reasons, plaintiff's motion for leave to amend the complaint is GRANTED in part and DENIED in part.  Specifically,

1.      Plaintiff's motion to amend the complaint, to the extent it seeks to add UMass Correctional Health as a new defendant, is DENIED.

2.      Plaintiff's motion to amend the complaint, to the extent it seeks to add defendant

---

[11] It appears from the parties' briefing that UMCH maintains a separate grievance system with different procedures from the grievance system employed by the Department of Corrections.

Gelb to Count Eight, is DENIED.

3.      Plaintiff's motion to amend the complaint is otherwise GRANTED.  The Second Amended Complaint will be the operative complaint in this matter as of the date of this memorandum and order; provided, however, that all claims as to defendant UMass Correctional Health and the claims in Count Eight against defendant Gelb are struck.

4.      DOC defendants' motion to dismiss for failure to exhaust administrative remedies is DENIED without prejudice to its renewal.

5.      Defendant Groblewski's motion to dismiss is DENIED without prejudice to its renewal.

6.      The clerk shall issue a new summons for defendant Groblewski.  The clerk shall send the summons, a copy of the second amended complaint, and this Memorandum and Order to plaintiff, who must thereafter serve Dr. Groblewski in accordance with Federal Rule of Civil Procedure 4(m).  Plaintiff may elect to have service made by the United States Marshals Service.  If directed by plaintiff to do so, the Marshals Service shall serve the summons, complaint, and this Order upon Dr. Groblewski in the manner directed by plaintiff, with all costs of service to be advanced by the United States Marshals Service.  Plaintiff shall have 60 days from the date of this Order to complete service.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: July 7, 2016