# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                    )
**FRANKLIN ABERNATHY,**              )
                                    )
      **Plaintiff,** )
                                    )    **Civil Action No.**
      v.                )    **15-10431-FDS**
                                    )
**SHAUN DEWEY, et al.,**             )
                                    )
      **Defendants.**  )
_____)

# MEMORANDUM AND ORDER ON
# PLAINTIFF'S MOTION TO AMEND

**SAYLOR, J.**

This is a civil rights action arising out of an alleged attack on a prisoner by correctional officers at Souza Baranowski Correctional Center. Plaintiff Franklin Abernathy has brought claims under 42 U.S.C. § 1983, Mass. Gen. Laws ch. 12, § 11I, and state tort law.

The third amended complaint alleges that several correctional officers aggressively pulled and twisted Abernathy's arms through a slot in his cell door, causing severe injuries, and that other officers either failed to intervene or attempted to cover up the incident. As relevant here, it also alleges that defendant "Kristal," a nurse at UMass Correctional Health ("UMCH"), refused to provide medical treatment to Abernathy.

Plaintiff has moved to amend the complaint to substitute the true name (Krystal Anderson) of the individual sued as defendant "Jane Doe a/k/a Nurse Kristal." For the following reasons, the motion will be granted, except as to the proposed claim against Anderson for intentional infliction of emotional distress.

## I. Background

### A. Factual Background

The facts are set forth as described in the third amended complaint.

On April 3, 2013, Franklin Abernathy was an inmate at Souza Baranowski Correctional Center. He was assigned to a cell in the Special Management Unit ("SMU") with inmate Leon Shelby. (TAC ¶¶ 18-19). Kyle Sheldon, Gerard Breau, and Michael Rumery were correctional officers at SBCC assigned to Abernathy's cell block. (*Id.* ¶¶ 5, 7, 9).

According to the complaint, on the morning of April 3, Sheldon and Breau stood outside Abernathy's cell, yelling obscene language and laughing at Shelby, and Shelby responded by yelling back at the officers. (*Id.* ¶ 20). At about 9 a.m., Sheldon returned to the cell and instructed Abernathy to remove a blanket Shelby placed over the window of the cell door. (*Id.* ¶ 22). Abernathy refused because the blanket belonged to Shelby, and Shelby then refused to remove the blanket. (*Id.*).

Ten minutes later, Rumery and "Kristal," a nurse employed by UMass Correctional Health, came to Abernathy's cell to administer daily medication that included Abernathy's pain and blood-pressure medication. (*Id.* ¶ 23). Rumery instructed Shelby to remove the blanket from the window, but Shelby again refused. (*Id.* ¶ 24). Rumery then requested that Abernathy remove the blanket, but Abernathy explained that the blanket belonged to Shelby and that Shelby did not want him to touch it. (*Id.* ¶ 25). According to the complaint, Rumery told Abernathy that he would not receive his prescribed medication if the blanket was not removed from the window. (*Id.* ¶ 26). When Abernathy then asked for his medication, Rumery allegedly said, "Fuck him." (*Id.* ¶ 27). He then "slammed" the cell door slot shut and told Kristal not to give Abernathy his medicine that day. (*Id.* ¶¶ 27-28). The lack of medication allegedly caused

Abernathy to suffer "severe pain, including chest pain and pain in his left shoulder and arm."
(*Id.* ¶ 29).

Later that morning, Shelby removed the blanket from the door. (*Id.* ¶ 30). Breau then approached the cell. Abernathy informed him that he was "suffering severe chest pain and required immediate medical attention." (*Id.* ¶ 31). Breau allegedly denied the request and told Abernathy, "You get nothing." (*Id.*).

At about 11:30 a.m. the same day, Sheldon returned to the cell to provide lunch. According to the complaint, Abernathy again requested medical attention. (*Id.* ¶ 32). Sheldon denied his request. (*Id.*). An argument then began between Shelby and Sheldon over a food tray. (*Id.* ¶¶ 33-36). Shortly thereafter, while Sheldon and Breau were collecting trays after lunch, Shelby threw water at Sheldon's face. (*Id.* ¶ 37). Sheldon and Breau immediately left the tier and returned with Rumery. (*Id.* ¶ 38). Rumery ordered Shelby to approach the cell door to be handcuffed, but he refused. (*Id.* ¶ 39). Rumery then told Shelby that he would use tear gas in the cell if Shelby continued to refuse. (*Id.*). The officers left again, and then returned once more with officer Shawnn Gyles and an unidentified correctional officer. (*Id.* ¶ 42).

Rumery then handcuffed Shelby through the cell door slot without incident. (*Id.* ¶ 43). Rumery informed Abernathy that he, too, needed to be handcuffed prior to opening the cell door. (*Id.* ¶ 44). A medical order posted outside Abernathy's cell indicated that due to prior injuries, he should only be handcuffed with his hands in front of his body. (*Id.* ¶ 46). The complaint alleges that when Abernathy complied, Rumery "aggressively grabbed [his] right hand and swung a handcuff with such force at [his] right wrist that a portion of the handcuff punctured [his] skin and lodged in his wrist," causing bleeding and pain. (*Id.* ¶ 47). According to the complaint, Breau and Sheldon then grabbed Abernathy's left arm and began twisting and pulling

3

it, causing cutting and bruising, while Rumery pressed the portion of the handcuff lodged in Abernathy's wrist, causing further bleeding and pain. (*Id.* ¶¶ 48-49). As Abernathy screamed in pain, the officers allegedly continued to laugh and encourage each other to pull harder and apply more force. (*Id.* ¶¶ 50-54). For example, Rumery allegedly laughed at Abernathy and told him that they were going to "fuck [him] up" but let Shelby go unharmed, and Breau and Sheldon mocked Abernathy by telling him to "[a]sk Shelby to help [him] now." (*Id.* ¶ 50, 53).

The complaint alleges that David Darling, the supervisor for the section of the SMU where Abernathy was held, approached the cell and grabbed and twisted Abernathy's thumb and index finger with great force, causing him pain while the other officers continued to use force against him. (*Id.* ¶ 56-57). It further alleges that officers Gyles and "John Doe," despite having a clear view of the altercation, made no effort to stop the assault or otherwise intervene. (*Id.* ¶¶ 58-59). Eventually, the officers stopped the assault when Shelby slipped his handcuffs in front of his body, grabbed a pen, and began stabbing at the officers' hands while they were pulling Abernathy's hands through the cell door slot. (*Id.* ¶ 61).

Abernathy and Shelby were then placed in separate holding cells. (*Id.* ¶ 65). Accordingly to the complaint, Abernathy was held in the cell for an hour and subjected to a strip search, but did not receive medical care. (*Id.* ¶ 66). He was then removed from the cell and surrounded by Shaun Dewey (a DOC Captain assigned to the SMU), Darling, and Rumery. (*Id.* ¶ 68). According to the complaint, Dewey drew his face very close to Abernathy's and told him to "[d]rop the issue and act like nothing happened" so "we all can live together." (*Id.* ¶ 68). It alleges that as a result of Dewey's threatening statement, Abernathy was afraid to say anything about the assault out of fear that he would be assaulted again. (*Id.* ¶¶ 68-69).

Following the incident, Abernathy was escorted to the medical triage room, where he was

seen by Nurse Kristal for treatment of his cuts, bruising, and swelling. (*Id.* ¶ 70-71). According to the complaint, Kristal refused to treat him, stating that she would not touch him and that he would have to wait for another nurse for treatment and medication. (*Id.* ¶¶ 73-74). This left Abernathy in pain. (*Id.* ¶ 75).

Darling and Rumery then escorted Abernathy back to his cell. (*Id.* ¶ 76). Abernathy asked Rumery why he had assaulted him, and Rumery allegedly laughed and responded, "Because I can do it." (*Id.*). According to the complaint, SBCC officers did not allow Abernathy to make any telephone calls between April 3 and April 5, 2013. (*Id.* ¶ 77). After April 3, 2013, Abernathy submitted more than 30 sick-call slips requesting treatment for his incident-related injuries, but he was denied treatment and alleges that he continued to suffer pain in his arms, wrists, and hands. (*Id.* ¶ 78).

The complaint alleges that as a result of the assault and lack of medical attention, Abernathy suffered physical injuries, including pain, cuts, and bruising on his arms, wrists, and hands; numbness in his hands and wrists; and emotional trauma, including fear, anxiety, stress, mood swings, and a loss of appetite and sleep. (*Id.* ¶¶ 60, 75).

### B.    **Procedural Background**

Proceeding *pro se*, Abernathy filed the original complaint in this case on February 13, 2015. He then filed a first amended complaint on December 16, 2015. He moved to file a second amended complaint on June 9, 2016, and a third amended complaint on November 1, 2016. On January 30, 2017, he retained counsel. On March 3, 2017, with the assistance of counsel, he again moved to file a third amended complaint. That motion was granted, and plaintiff's third amended complaint was filed on April 10, 2017.

The third amended complaint includes twelve counts, of which four were brought against

"Jane Doe a/k/a Nurse Kristal": a § 1983 claim against for denial of medical care and treatment (Count Three); a claim for negligence (Count Eight); a claim for intentional infliction of emotional distress (Count Eleven); and a claim for negligent infliction of emotional distress (Count Twelve).

Upon discovery of the true identity of "Nurse Kristal," plaintiff moved to file a fourth amended complaint to substitute defendant's true name, Krystal Anderson.

## II. Legal Standard

Under Fed. R. Civ. P. 15(a)(2), leave to amend a complaint shall be "freely give[n] . . . when justice so requires." However, courts have discretion to deny leave to amend for several reasons, including "futility of amendment." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (finding that a motion for leave to amend should be denied when it is characterized by "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

When considering an opposition to a motion to amend on the ground of futility, courts must apply the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001). Whether a proposed amended complaint would survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard set forth in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544.

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness*

*Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). A plaintiff does not need to include detailed factual allegations," but mere "labels and conclusions" and "formulaic recitation of the elements of a cause of action will not do." *Hernandez v. Castillo*, 2010 WL 3372527, at *4 (D. P.R. Aug. 24, 2010) (quoting *Twombly*, 550 U.S. at 544). Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed as to do justice."). However, once a former *pro se* party retains counsel and counsel reviews the pleadings, the party's pleadings are no longer entitled to liberal construction. *See John A. King, LLC v. Hospital Corp.*, 381 Fed. Appx. 577, 579 (6th Cir. 2010) (noting that because plaintiffs obtained counsel and were thus no longer *pro se*, "the relaxed [*pro se*] standard does not apply."); *Weaver v. Nooth*, 2011 WL 1750271, at *5 (D. Or. Mar. 23, 2011) (finding that former *pro se* plaintiff's claim was not entitled to liberal construction because his appointed

counsel reviewed defendant's petition and did not attempt to rectify the pleading deficiency pointed out until more than one year later).

## III.    Analysis

Defendant raises three issues in opposing plaintiff's motion to amend, all essentially contending that the proposed amendment would be futile.  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).  The court must review a proposed amended complaint for futility under the "standard [that] applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006).

Defendant contends (1) that the proposed claims are barred by the statute of limitations because the amended complaint does not relate back to the original complaint filed in 2015; (2) that the Massachusetts Tort Claims Act immunizes her for any alleged negligent acts; and (3) that the amended complaint fails to plead the requirements for intentional infliction of emotional distress and violation of Eighth Amendment rights under § 1983.

### A.    Statute of Limitations

The proposed civil rights and tort-based causes of action are subject to a three-year limitations period.  *See Poy v. Boutselis*, 352 F.3d 479, 483 (1st Cir. 2003) (a claim under § 1983 "borrows" the state limitations period for personal injury claims); Mass. Gen. Laws ch. 260, § 5B (state civil rights actions); Mass. Gen. Laws ch. 260, § 2A (negligence).  Plaintiff's claims accrued on April 3, 2013, and he moved to amend his complaint on June 5, 2017, over one year after the expiration of the three-year period.

When a plaintiff seeks to add a claim against a new defendant in an amended complaint

filed after the limitations period has run, the claim is "time-barred as a matter of law unless the amended complaint 'relates back' to the original complaint." *Coons v. Industrial Knife Co.*, 620 F.3d 38, 42 (1st Cir. 2010). Whether an amendment relates back, in turn, is governed by Fed. R. Civ. P. 15(c). Under Rule 15(c)(1)(A), an amendment will relate back when "the law that provides the applicable statute of limitations allows relation back." Thus, in effect, Rule 15(c)(1)(A) "cements in place a one-way ratchet; less restrictive state relation-back rules will displace federal relation-back rules, but more restrictive state relation-back rules will not." *Morel v. DaimlerChrysler AG*, 565 F.3d 20, 26 (1st Cir. 2009); *see also* Fed. R. Civ. P. 15 advisory committee notes (1991 Amendment) (Rule 15(c)(1)(A) is designed to "make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law.").

Plaintiff seeks to add claims under both Massachusetts law (common-law negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress) and federal law (42 U.S.C. § 1983). Thus, under Fed. R. Civ. P. 15(c)(1)(A), whether his state-law claims relate back is an issue of Massachusetts law. *See Labrador v. Industrial Contractors' Supplies, Inc.*, 2015 WL 5737141, at *2 (D. Mass. Sept. 30, 2015).

Mass. R. Civ. P. 15(c) provides as follows:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading.

Mass. R. Civ. P. 15(c). "Since Massachusetts Rule 15 is less restrictive, it displaces Federal Rule 15 in this case." *Labrador*, 2015 WL 5737141, at *2.

Here, the proposed state-law claims unquestionably arise out of the same conduct, transaction, or occurrence set forth in the original complaint. Thus, the proposed state-

9

law claims relate back under Massachusetts law, and therefore relate back under the federal rules as well.

With respect to the proposed federal claims under 42 U.S.C. § 1983, the law that "provides the applicable statute of limitations" is, again, Massachusetts law. *See Cayo v. Fitzpatrick*, 95 F. Supp. 3d 8, 13 (D. Mass. 2015). Following the same line of reasoning, those new claims would, if allowed, relate back to the date of the original complaint. Because plaintiff filed his original complaint within the three-year limitations period, the motion to amend is timely.[1]

### B. <u>Massachusetts Tort Claims Act</u>

Under the Massachusetts Tort Claims Act, individual public employees are immune from suits stemming from negligent conduct committed within the scope of their office or employment. Mass. Gen. Laws ch. 258, § 2; *Wiesman v. Hill*, 629 F. Supp. 2d 106, 113 (D. Mass. 2009) (citing *Jackson v. Town of Milton*, 41 Mass. App. Ct. 908, 669 N.E.2d 225 (1996)). Therefore, whether plaintiff can assert claims for negligence and negligent infliction of emotional distress against Anderson depends on whether she was a public employee acting within the scope of her employment at the relevant time.

"Whether an individual is a public employee is a question of fact." *Williams v. Hartman*, 413 Mass. 398, 400 (1992). A public employer is "any department, office, commission,

---

[1] It is unnecessary to resolve whether the complaint also relates back under Rule 15(c)(1)(C). That portion of the rule permits relation back when (1) the claim arose from the same occurrence set out in the original pleading, (2) the new party received sufficient notice within the period prescribed in Fed. R. Civ. P. 4(m) that it would not be prejudiced in its defense, and (3) the new party knew or should have known that the action would be brought against it, but for a mistake concerning its identity. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 547 (2010). Rule 15(c)(1)(C) focuses not on whether "[plaintiff] knew or should have known the identity of [defendant] . . . but whether [defendant] knew or should have known that [she] would have been named as a defendant but for an error." *Id*. at 548. The original complaint referred to "Nurse Kristal" and her actions at the prison on April 3, 2013. It is doubtful that more than one UMCH nurse named Krystal was involved in the events that day. Nonetheless, defendant disputes whether she received sufficient notice of the lawsuit.

commission, committee, council, board, division, bureau, institution, agency or authority thereof." Mass. Gen. Laws ch. 258, § 1. It is undisputed that UMCH is part of the University of Massachusetts Medical School, which is a public employer, and all UMCH employees are Medical School employees. *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 663 (D. Mass. 2016) (citing *McNamara v. Honeyman*, 406 Mass. 43, 48 (1989)). However, merely receiving a paycheck from a public agency does not make an individual a public employee. *See Williams*, 413 Mass. at 400.

"The determinative question in assessing whether an individual is a public employee within the meaning of the MTCA is whether the individual is 'subject to the direction and control of a public employer.'" *Lopes*, 177 F. Supp. 3d at 663 (citing *Smith v. Steinberg*, 395 Mass. 666, 667 (1985)). That is the same test used to determine whether a principal should be liable for an agent's negligent acts under the common law doctrine of *respondeat superior*. *See McNamara*, 406 Mass. at 48.

In the case of a health-care professional, relevant factors for that analysis include whether the employer regulated the employee's hours, where she worked, and which patients she would treat. *Id.* Other factors are whether she had private patients and if her income was determined by the number of patients. *Id.* Nurses, unlike doctors, "function within the hierarchy of the [facilities] in which they work[, and they] are not free to exercise their independent judgment to the degree that doctors [are]." *Bianchi v. Bartlett*, 2011 WL 1326639, at *10 (D. Mass. Mar. 31, 2011) (quoting *Tomaccio v. Hardy*, 2007 WL 1630961, at *4 (Mass. Super. Ct. May 25, 2007)).

It is not possible at this stage of the proceedings, and based solely on the pleadings, to determine whether Anderson was a public employee. Presumably, that question can be resolved at an early stage of proceedings on an appropriate factual record, but it is not a basis to deny

11

amendment of the complaint on the ground of futility.

### C. <u>Failure to State a Claim</u>

Defendant contends that the motion to amend with respect to the claims against Anderson for intentional infliction of emotional distress and violation of § 1983 should be denied on the ground of futility because they fail to state a claim upon which relief can be granted.

#### 1. <u>Intentional Infliction of Emotional Distress</u>

To state a claim for intentional infliction of emotional distress under Massachusetts law, a complaint must allege:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency[,] and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

*Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976) (citations and internal quotation marks omitted); *accord Brown v. Hearst Corp.*, 54 F.3d 21, 27 (1st Cir. 1995); *see also Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 380 (1st Cir. 1991). Courts apply a "very high" standard to claims of intentional infliction of emotional distress, especially on the requirement that the conduct in question is extreme and outrageous, beyond all possible bounds of decency in a civilized community. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996). "[L]iability cannot be predicated upon 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987) (quoting Restatement (Second) of Torts § 46, cmt. d (1965)).

The proposed amended complaint fails to allege conduct by Anderson that is sufficiently extreme and outrageous to meet that high standard. At worst, based on the allegations of the

proposed amended complaint, she may have been callously indifferent towards plaintiff's suffering. That is not the type of targeted, deliberate, and malicious conduct required for an IIED claim. Even if her conduct violated plaintiff's civil rights, that does not "necessitate a finding that the conduct is sufficiently egregious to state a claim for [IIED]." *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 319 (D. Mass. 1997) (citing *Marques v. Fitzgerald*, 99 F.3d 1, 6-7 (1st Cir. 1996)). Therefore, plaintiff will not be permitted to amend the complaint to assert an IIED claim against Anderson.

### 2. **Violation of § 1983**

"[T]o succeed in an Eighth Amendment claim under § 1983 claim based on denied . . . medical care," a plaintiff must prove (1) an objectively serious medical need and (2) that defendant exhibited "deliberate indifference" to the prisoner's needs. *Lopes*, 177 F. Supp. 3d at 657 (citing *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014)). "Deliberate indifference" requires that defendant be subjectively "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference." *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 156 (1st Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mere medical negligence will not support a § 1983 claim. "[R]ather, the treatment provided must have been so inadequate to constitute 'an unnecessary and wanton infliction of pain . . . .'" *Lopes*, 177 F. Supp. 3d at 658 (quoting *Leavitt v. Correctional Med. Servs, Inc.*, 645 F.3d 484, 497 (1st Cir. 2011)).

Whether a "serious medical need" existed is a fact-specific inquiry. *Leavitt*, 645 F.3d at 500. Some medical conditions, such as HIV, are plainly serious. *Id.* Others, such as application of a paste which the prisoner himself could apply, are minor. *See Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). Plaintiff contends that he was battered by correctional officers, resulting in

13

visible cuts, bleeding, bruising, and swelling on several parts of his body. (TAC ¶¶ 70-71). Although an attending physician did not mandate immediate treatment, the injuries alleged are sufficiently "obvious that even a lay person would easily recognize the necessity for [medical] attention." *Leavitt*, 645 F.3d at 497 (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)).

A § 1983 claim also requires proof of "deliberate indifference." The First Circuit has stated that "deliberate indifference 'defines a narrow band of conduct.'" *Kosilek*, 774 F.3d at 83 (citing *Feeney v. Correctional Med. Servs. Inc.*, 464 F.3d 158, 162 (1st Cir. 2006)). The failure to properly treat the serious medical need must be intentional. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). However, a "deliberate intent to harm is not required." *Battista v. Clarke*, 645 F.3d 449, 453 (1st Cir. 2011) (citing *Farmer*, 511 U.S. at 835). Instead, "denial of needed medical treatment in order to punish the inmate" or disregard of a prisoner's needs "akin to criminal recklessness, requiring consciousness of 'impending harm, easily preventable'" is necessary to constitute deliberate indifference. *Kosilek*, 774 F.3d at 83 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)).

Here, defendant allegedly refused to provide medical treatment or even touch plaintiff, despite being aware of the extent of his injuries. (TAC ¶¶ 74, 114). An outright refusal to provide any treatment whatsoever to a seriously injured prisoner, whose injuries would become aggravated if untreated, raises a plausible inference of deliberate indifference. *See Perry v. Roy*, 782 F.3d 73, 79 (1st Cir. 2015) ("The subjective prong relies entirely on whether [defendant] had a purposeful intent while neglecting [plaintiff's] treatment."). Accordingly, the proposed amended complaint pleads sufficient facts to support a § 1983 claim against defendant Anderson.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for leave to amend the complaint to substitute Krystal Anderson for "Nurse Kristal" is GRANTED in part and DENIED in part. The proposed amendment to add a claim for intentional infliction of emotional distress against Anderson is DENIED.

The fourth amended complaint, as limited by the Court's ruling, is deemed to have been filed today, September 28, 2017. The clerk shall issue a new summons for defendant Anderson. The clerk shall send the summons, a copy of the fourth amended complaint, and this Memorandum and Order to plaintiff, who must thereafter serve Anderson in accordance with Federal Rule of Civil Procedure 4(m). Plaintiff may elect to have service made by the United States Marshals Service. If directed by plaintiff to do so, the Marshals Service shall serve the summons, complaint, and this Order upon Anderson in the manner directed by plaintiff, with all costs of service to be advanced by the United States Marshals Service. Plaintiff shall have 60 days from the date of this Order to complete service.

**So Ordered.**

Dated: September 28, 2017

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge